**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED REFINING COMPANY | **CIVIL ACTION** |
| Plaintiff, | **NO.:  2:13-cv-00909-CDJ** |
| v. | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA, | Date: TBD |
| | Time: TBD |
| ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, | Location:  TBD |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON AND LONDON MARKET INSURANCE COMPANIES, | |
| XL INSURANCE (BERMUDA) LTD, | |
| SWISS RE INTERNATIONAL SE, | |
| CHARTIS, and, | |
| CRAWFORD & COMPANY d/b/a CRAWFORD GLOBAL TECHNICAL SERVICES, | |
| Defendants. | |

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**

**THE AMENDED COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that as soon as the matter may be heard in the above entitled Court, located at 601 Market St., Philadelphia, Pennsylvania, Defendants NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("National Union"); ALLIANZ GLOBAL RISKS US INSURANCE COMPANY ("Allianz"); CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO AJN0093509A09 (Syndicate 1183); CERTAIN

- 1 -

UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO EL900296 (Syndicates 2003, 2987, 9129); GREAT LAKES REINSURANCE (UK) PLC; INFRASSURE, LTD; GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA improperly identified as GSINDA/SCOR; TORUS INSURANCE (UK) LTD; PARIS RE HOLDINGS, LTD; and GLACIER INSURANCE; SWISS RE INTERNATIONAL SE ("Swiss Re"); XL INSURANCE (BERMUDA) LTD ("XL Bermuda") (collectively, "Insurer Defendants"); CHARTIS CLAIMS, INC. ("Chartis Claims") improperly identified as the non-legal entity "CHARTIS"; and CRAWFORD & COMPANY ("Crawford") will and do hereby request an oral argument on this matter and move this Court for an Order:

1.      Dismissing all counts in the Amended Complaint against all Defendants pursuant to the arbitration agreements in the subject Policies and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

2.      Dismissing Counts II and III of the Amended Complaint for Intentional Interference with Contractual Relations against Defendants Chartis Claims, Crawford and National Union for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

3.      Dismissing Count IV of the Amended Complaint for Violation of the Pennsylvania Bad Faith Statute against the Insurer Defendants because New York law applies to this matter.

4.      Dismissing all counts in the Amended Complaint against Certain Underwriters at Lloyd's of London Subscribing to AJN0093509A09 (Syndicate 1183); Certain Underwriters at Lloyd's of London Subscribing to EL900296 (Syndicates 2003, 2987, 9129); Great Lakes Reinsurance (UK) PLC; Infrassure, Ltd.; General Security Indemnity Company of Arizona; Torus Insurance (UK) Ltd.; Paris Re Holdings, Ltd.; and Glacier Insurance pursuant to Fed. R. Civ. P. 12(b)(6) because United Refining Company ("United") did not commence the lawsuit against them within the 12-month time limitation in the Policy.

This motion is based upon this Notice of Motion, the attached Memorandum in Support of Motion, the Order lodged concurrently herewith, the Court's file on this matter, and upon such other and further evidence and argument as may be presented prior to or at the time of the hearing on this Motion.

By:   /s/ Amy M. Churan
William A. Webster  (*Admitted Pro Hac Vice*)
Amy M. Churan (*Admitted Pro Hac Vice*)
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2049 Century Park East, 34th Floor
Los Angeles, CA  90067-3208
E-mail: WAWebster@rkmc.com
E-mail: AMChuran@rkmc.com
Telephone:   310-552-0130
Facsimile:    310-229-5800

Basil A. DiSipio
**LAVIN, O'NEIL, RICCI, CEDRONE & DiSIPIO**
190 N. Independence Mall West, Suite 500
Philadelphia, PA 19106
E-mail: BDisipio@Lavin-Law.com
Telephone:  (215) 351-7929
Facsimile:  (215) 627-2551

Attorneys for Defendants

NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA; ALLIANZ GLOBAL RISKS US
INSURANCE COMPANY; CERTAIN UNDERWRITERS
AT LLOYD'S OF LONDON SUBSCRIBING TO
AJN0093509A09 (Syndicate 1183); CERTAIN
UNDERWRITERS AT LLOYD'S OF LONDON
SUBSCRIBING TO EL900296 (Syndicates 2003, 2987,
9129); GREAT LAKES REINSURANCE (UK) PLC;
INFRASSURE, LTD; GENERAL SECURITY INDEMNITY
COMPANY OF ARIZONA; TORUS INSURANCE (UK)
LTD; PARIS RE HOLDINGS, LTD; GLACIER
INSURANCE; XL  (BERMUDA) LTD; SWISS RE
INTERNATIONAL SE; CHARTIS CLAIMS, INC.; and
CRAWFORD & COMPANY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED REFINING COMPANY | **CIVIL ACTION** |
| Plaintiff, | **NO.:  2:13-cv-00909-CDJ** |
| v. | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA, | Date: TBD |
| ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, | Time: TBD |
| | Location:  TBD |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON AND LONDON MARKET INSURANCE COMPANIES, | |
| XL INSURANCE (BERMUDA) LTD, | |
| SWISS RE INTERNATIONAL SE, | |
| CHARTIS, and, | |
| CRAWFORD & COMPANY d/b/a CRAWFORD GLOBAL TECHNICAL SERVICES, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE**

**AMENDED COMPLAINT**

### INTRODUCTION

There is a strong federal policy of enforcing arbitration agreements and resolving disputes through arbitration.  The policy is reflected in the Federal Arbitration Act and an extensive body of decisions from the federal courts.  As a result, when parties to a contract, such as an insurance policy, chose to include an arbitration provision, the choice is enforced by the courts.  Attempts

to avoid arbitration by including spurious and unfounded claims and by fraudulent joinder of defendants who are not liable, are disregarded and the federal policy is enforced.

United Refining Company ("United") agreed in the insurance policies it obtained from the Insurer Defendants that any disagreement in whole or in part on the liability of the Insurer Defendants will be resolved by binding arbitration. Nevertheless, after United disagreed on the liability of the Insurer Defendants for a claim submitted by United, it chose to unilaterally disregard the arbitration agreements and bring a lawsuit against them. Moreover, in an attempt to circumvent the wording of the agreements, United added an unfounded tort claim against one of the Insurers, Chartis Claims, and the loss adjuster for "intentional interference with contractual relations."

Defendants[1] request the Court follow the strong federal policy to enforce arbitration agreements and dismiss all counts against all Defendants. Specifically, Defendants request that the Court:

1.      Dismiss all counts against all Defendants pursuant to the arbitration agreements in the Policies and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

2.      Dismiss Counts II and III of the Amended Complaint for Intentional Interference with Contractual Relations against Defendants Chartis Claims, Crawford and National Union for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] The Defendants are National Union Fire Insurance Company of Pittsburgh, PA ("National Union"); Allianz Global Risks US Insurance Company ("Allianz"); Certain Underwriters at Lloyd's of London Subscribing to AJN0093509A09 (Syndicate 1183); Certain Underwriters at Lloyd's of London Subscribing to EL900296 (Syndicates 2003, 2987, 9129); Great Lakes Reinsurance (UK) PLC, Infrassure, Ltd.; General Security Indemnity Company of Arizona improperly identified as Gsinda/Scor; Torus Insurance (UK) Ltd.; Paris Re Holdings, Ltd.; Glacier Insurance; Swiss Re International SE ("Swiss Re"); XL Insurance  (Bermuda) Ltd ("XL Bermuda") (collectively, "Insurer Defendants"); Chartis Claims, Inc. ("Chartis Claims") improperly identified as the non-legal entity "Chartis"; and Crawford & Company ("Crawford").

3.      Dismiss Count IV of the Amended Complaint for Violation of the Pennsylvania Bad Faith Statute against the Insurer Defendants because New York law applies to this matter.

4.      Dismiss all counts in the Amended Complaint against Certain Underwriters at Lloyd's of London Subscribing to AJN0093509A09 (Syndicate 1183); Certain Underwriters at Lloyd's of London Subscribing to EL900296 (Syndicates 2003, 2987, 9129); Great Lakes Reinsurance (UK) PLC; Infrassure, Ltd.; General Security Indemnity Company of Arizona; Torus Insurance (UK) Ltd.; Paris Re Holdings, Ltd.; Glacier Insurance pursuant to Fed. R. Civ. P. 12(b)(6) because United did not commence the lawsuit against them within the 12-month time limitation in the Policy.

### STATEMENT OF FACTS

Plaintiff United Refining Company ("United") owns and operates an oil refinery near Warren, Pennsylvania. (Amended Compl. ¶ 3).  Heavy crude oil is transported to the refinery, in part, by a pipeline owned and operated by Enbridge Energy Partners and designated as Enbridge Pipeline 6B. (Amended Compl. ¶ 31). Enbridge Pipeline 6B is a 30-inch diameter pipeline that runs 293 miles between Griffith, Indiana and Sarnia, Ontario. (Amended Compl. ¶ 27). The refinery connects to Enbridge Pipeline 6B with a pipeline owned by Kiantone Pipeline Corporation, an affiliate of United Refining Company. (Amended Compl. ¶ 29). The Kiantone Pipeline is connected to the Enbridge Pipeline 6B in Buffalo, New York. (Amended Compl. ¶ 29).

### A.      Key Policy Terms

United obtained insurance policies providing coverage for direct physical loss or damage to covered property from the Insurer Defendants.  The references throughout this Memorandum to the "Policies" refer to the Policies issued by all Insurers except XL Bermuda, and the XL Bermuda policy is referred to specifically as the "XL Bermuda Policy". (Amended Compl., Ex. B, p. 1; Ex. C, p. 5; Ex. D, p. 5; Ex. E, p. 5; Ex. F, p. 5).

The Policies include an agreement that any suit against the Insurers will be commenced within 12 months of declination of a claim:

18.     SUIT AGAINST THE COMPANY

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have complied with the requirements of this policy nor unless commenced within twelve (12) months of declination of claim by the Company, unless a longer period of time is provided by applicable statute.

(Amended Compl., Ex. B, p. 14; Ex. C, p. 14; Ex. D, p. 14; Ex. E, p. 14; Ex. F, p. 14).

The Policies also include a binding arbitration agreement:

27.     ARBITRATION CLAUSE

If the Insured and the Company fail to agree in whole or in part on the liability of the Insured or on the amount of loss or damage, each party shall, within twenty (20) days after the demand in writing by either party appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall so fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same, and be binding on both parties. The parties to such arbitration shall pay the arbitrators respectively appointed by them and shall bear equally the expenses of the arbitration and the charges of the umpire.

(Amended Compl., Ex. B, p. 16; Ex. D, p. 15; Ex. E, p. 15; Ex. F, p. 15).

The Policies, with the exception of the policy issued by Allianz, require that any dispute relating to the Policy or a claim shall be governed by New York law:

36.     CHOICE OF LAW AND JURISDICTION

Notwithstanding any provisions of the policy with respect to applicable law and jurisdiction, any dispute between the Insured and Underwriters relating to this Policy or to a claim (including but not limited thereto, the interpretation of any provision of the Policy) shall be governed by and construed in accordance with the laws of New York.

Subject to the Arbitration Clause of the Policy Wording, each party agrees to submit to the exclusive jurisdiction of the Courts of the United States of America.

(Amended Compl., Ex. D, p. 17; Ex. E, p. 17; Ex. F, p. 17).[2]

---

[2] All of the Policies contain a New York choice of law provision except the Allianz policy. The XL Bermuda Policy contains a New York choice of law provision with different policy wording. (Amended Compl., Ex C, p. 3).

XL Bermuda's policy requires arbitration in London and does not include a provision agreeing to be subject to the jurisdiction of the courts of the United States. (Amended Compl., Ex. C., p.1 deleting clause 34). The XL Bermuda Policy contains the following arbitration provision:

> 4.    ARBITRATION
>
> Any dispute, controversy or claim arising out of or relating to this Policy or the breach, termination or invalidity thereof shall be finally and fully determined in London, England under the provisions of the Arbitration Act 1996 ("Act") and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators to be selected for each controversy as follows...

(Amended Compl., Ex.C, p. 2).

## C.    July 26, 2010 Rupture and Subsequent Insurance Claim

United alleges that on July 26, 2010 a rupture occurred on Enbridge Pipeline 6B near Marshall, Michigan. (Amended Compl. ¶ 35). As a result of the rupture, the Pipeline and Hazardous Materials Safety Administration ordered the pipeline shut down and issued a Corrective Action Order requiring certain actions be completed before restarting the flow of oil. (Amended Compl. ¶ 38-39).

United submitted an insurance claim to the Insurer Defendants for contingent business interruption and contingent extra expense losses arising out of the Enbridge Pipeline 6B rupture. (Amended Compl. ¶ 48). On October 10, 2010 the Insurer Defendants sent a letter to United denying the claim. (Amended Compl. ¶ 52).

On October 5, 2012, five days before the suit limitation expired, United filed a Praecipe to Issue Writ of Summons in the Court of Common Pleas, County of Philadelphia, Pennsylvania. (Praecipe to Issue Writ of Summons, attached as Ex. A). The Praecipe named "National Union Fire Insurance Company of Pittsburgh, PA", "Allianz Global Risks US Insurance Company," "Certain Underwriters at Lloyd's of London and London Market Insurance Companies," "XL Insurance (Bermuda) Ltd," "Swiss Re International SE," "Chartis," and "Crawford & Company d/b/a Crawford Global Technical Services" as defendants. (Ex. A). United did not file a

Complaint nor did United file the Policies or any other document identifying the defendants or the policy numbers.

On January 24, 2013 United filed a Complaint in the Court of Common Pleas, County of Philadelphia, Pennsylvania ("Complaint"). The Complaint alleges claims for breach of contract, intentional interference with contractual relations, and statutory bad faith.

United served "Certain Underwriters at Lloyds of London and London Market Insurance Companies" with the Complaint on January 31, 2013 by service upon Mendes and Mount as designated in the policies. No attempt to serve any of the Defendants was made prior to January 31, 2013.

On February 19, 2013 Defendants timely removed the action to this Court. On February 26, 2013 Defendants filed a Motion to Dismiss the Complaint.

On March 19, 2013 United filed an Amended Complaint ("Amended Complaint"). The Court denied the Motion to Dismiss as being moot on March 22, 2013.

Defendants now move the Court for an Order dismissing the Amended Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure.

## ARGUMENT

## I.    THE ARBITRATION AGREEMENTS IN THE POLICIES COMPEL DISMISSAL OF THE AMENDED COMPLAINT AGAINST ALL DEFENDANTS

The arbitration agreements in the Policies and the XL Bermuda Policy require the arbitration of the breach of contract and tort claims asserted by United against all defendants. Defendants request an Order dismissing the claims for the following reasons:

A.    The arbitration agreements in the domestic insurer Policies preclude United's lawsuit against the domestic Insurer Defendants pursuant to Chapter 1 of the Federal Arbitration Act,

B.    The arbitration agreements in the foreign insurer Policies and the XL Bermuda Policy preclude United's lawsuit against the foreign Insurer Defendants and XL Bermuda pursuant to Chapter 2 of the Federal Arbitration Act,

C.      The intentional interference with contractual relations claims asserted against National Union are within the ambit of the arbitration agreement, and

D.      The intentional interference with contractual relations claims asserted against Crawford and Chartis Claims should be arbitrated or stayed.

The Federal Arbitration Act ("FAA") mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. *Dean Witter Reynolds v. Byrd,* 470 U.S. 213 (1985). The FAA expresses a "strong federal policy of resolving disputes through arbitration." *Century Indemnity Co. v. Certain Underwriters at Lloyds*, 584 F.3d 513 (3rd Cir. 2009). The strong federal policy "applies with special force in the field of international commerce." *Id.*

The United States Supreme Court has emphasized that where a contract contains an arbitration clause, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communication Workers,* 475 U.S. 643 (1986).

Enforcement of the arbitration agreements in the policies issued by the domestic insurers, National Union and Allianz, is required by Chapter 1 of the Federal Arbitration Act, 9 U.S.C.A. §§ 1-16 ("FAA"). Arbitration of the claims against the foreign insurers is governed by Chapter 2 of the FAA, 9 U.S.C.A §§ 201-208.

### A.      Chapter 1 of the FAA requires arbitration of all claims asserted against the domestic insurers.

The FAA applies to the arbitration agreement in the policies United obtained from the domestic insurers. Chapter 1 of the FAA provides that a provision in any contract "evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable." 9 U.S.C.A. § 2. The FAA requires a two-step analysis to determine if the agreement is enforced and both factors compel a determination that the arbitration provision in the Policies must be enforced.

To determine if the arbitration provision will be enforced, two factors are considered:

> The FAA mandates that the district courts must direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.   In determining whether the parties agreed to arbitrate the dispute, a court should consider (1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the dispute falls within the scope of the agreement.

*Webb v. Investacorp, Inc.* 89 F.3d 252 (5th Cir. 1996).

Both factors are satisfied by the arbitration agreements in the policies obtained from the domestic insurers and as a result, the Court must compel United to arbitrate all claims against the domestic insurers.

First, there is no credible dispute that there is a valid, enforceable, and irrevocable arbitration provision in the Policies.   The arbitration clause contains an obvious error by reference to the "liability of the *Insured*" rather than "liability of the "*Insurer.*"   The only reasonable interpretation of the provision is that it refers to the liability of the Insurer.

This Court agreed and previously held that this exact wording should be understood to pertain to the liability of *Insurers*, not the *Insured*.   In *Aetna Casualty & Sur. Co. v. Richard I. Rubin & Co.*, 1994 U.S. Dist. LEXIS 17347, the Court interpreted the exact language as that in the arbitration provision in the Policies.   There, the Court addressed the argument that the arbitration agreement did not require arbitration of disputes over the liability of the Insurer, because the provision by its literal terms applied only to disputes over the liability of the Insured. In rejecting the argument, the Court stated:

> In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." … Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

\*   \*   \*

> Following these principles, I conclude that the Policy's arbitration clause is more reasonably understood as pertaining to the liability of Aetna rather than to the liability of Rubin.  The Policy's main purpose is to set forth the terms of Aetna's insurance coverage; consequently, disagreement between the parties over Aetna's liability would be a forseeable circumstance under the Policy.  In contrast, it is difficult to envision how disputes over Rubin's liability would arise.  Although Rubin is responsible under the Policy for paying insurance premiums, contention over Rubin's payments seems unlikely given that the Policy already provides for Aetna's termination of the Policy upon non-payment by Rubin.

*Aetna Casualty*, 1994 U.S. Dist. LEXIS 17347, *10-11.

The arbitration provision in the Policies, therefore, satisfies the first step. In regard to the second step, the provision specifically covers the dispute raised in United's Amended Complaint. United contends the Insurers breached the insurance contract and "failed to acknowledge and provide coverage for United Refining for its losses arising out of the Enbridge 6B Rupture." (Amended Compl. ¶ 61).  The alleged failure to provide coverage is a failure to agree on the liability of the Insurer and triggers the arbitration provision.

**B.      Chapter 2 of the FAA requires arbitration of all claims asserted against the foreign insurers.**

Chapter 2 of the FAA implements the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also referred to as the New York Convention.  *Century Indemnity Co. v. Certain Underwriters at Lloyd's subscribing to Retrocessional Agreements 950549, et al.*, 584 F.3d 513 (3rd Cir 2009).  Arbitration agreements fall within the New York Convention if they arise from arbitration agreements in commercial contracts, except when the relationships are entirely between citizens of the United States. *Id.* at 523. The United States Supreme Court and the Third Circuit Court of Appeals have recognized that "the strong federal policy favoring arbitration applies with special force in the field of international commerce." *Id.* at 523, citing *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth*, 473 U.S. 614 (1985).

The Third Circuit Court of Appeals has held that a court must address four factors to determine whether an arbitration agreement falls under the New York Convention: (1) Is there an agreement in writing to arbitrate the subject of the dispute; (2) Does the agreement provide for

arbitration in the territory of a signatory of the Convention; (3) Does the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial; (4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states.  *Std. Bent Glass Corp. v. Glassrobots*, 333 F.3d 440, 448-449 (3d Cir. Pa. 2003).

If the answers are all in the affirmative, the court must order arbitration pursuant to the Convention unless it determines the agreement is null and void. *Id.*

In this instance, the four questions are all answered in the affirmative, thus compelling the court to enforce the arbitration agreement and dismiss the Amended Complaint.  The insurance policies obtained by United from Certain Underwriters at Lloyd's subscribing to the policies attached to the Amended Complaint, the policies issued by the London Market Companies, and the XL Bermuda Policy, are all written agreements; the Polices allow for arbitration in the United States, and the XL Policy provides for arbitration in the U.K., both signatory countries; the agreement arises out of a commercial relationship, that of insurer and insured; and, the foreign insurers are not American citizens.

Because the four questions are answered in the affirmative, the arbitration agreements in the policies obtained from Certain Underwriters at Lloyd's, the London Market Companies, Swiss Re International, and XL Bermuda are valid and enforceable and require dismissal of United's claims.

> **C.**     **The tort claims asserted by United against National Union are also arbitrable.**

United asserts a claim against National Union for intentional interference with contractual relations.  The claim falls within the ambit of the arbitration agreement in the National Union policy and should be dismissed.

Courts have long recognized that in determining which claims may be subject to an arbitration provision the critical inquiry is whether the claims go to the "heart of the dispute." *Summer Rain v. Donning*, 964 F.2d 1455 (4th Cir. 1992).  Whether a claim falls within the scope

of an arbitration agreement turns on the factual allegations in the Complaint rather than the legal causes of action asserted.  *Genesco Inc. v. T. Kakiuchi and Co. Ltd.* 815 F.2d 840 (2d Cir. 1987); *Gregory v. Electro Mechanical Corp.* 83 F.3d 382 (11th Cir. 1996).

A broad arbitration clause does not limit arbitration to the literal interpretation or performance of the contract.  It embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the claim.  *Miller v. Northwest,* 2005 U.S. Dist. LEXIS 43770, 12-13 (E.D. Wash. July 20, 2005).

In analyzing whether a claim falls within the scope of an arbitration provision, the "focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *Nova CTI Caribbean v. Edwards,* 2004 U.S. Dist. LEXIS 41 (E.D. Pa. Jan. 8, 2004).  In *Nova CTI,* this Court specifically held that a claim for tortious interference with contractual relations may be subject to the arbitration agreement in the parties' contract. The Court noted that where the factual underpinnings of the breach of contract claim were the same for the interference with contract claim, the tort claim was also arbitrable.  *Id.*   The court relied upon the presumption in favor of arbitration and the finding that "[n]otably, there is no language in the Agreement indicating that the parties wanted these types of claims to be decided by the courts rather than through arbitration."  *Id.*

United's Amended Complaint alleges that National Union's "denial of United Refining's claims has, thus, intentionally interfered with United Refining's contractual relationships with each of the other Insurance Company Defendants."  (Amended Compl. ¶ 71).  The factual underpinnings as alleged by United are the same for the breach of contract and the tort claim, and both are therefore within the ambit of the arbitration agreement in the National Union policy.

> **D.**      **The intentional interference with contractual relations claim asserted against Crawford and Chartis Claims should be arbitrated or stayed.**

Although Chartis Claims and Crawford do not have a contractual relationship with United, the intentional interference with contractual relations claim asserted by United can be included in the arbitration pursuant to a recognized estoppel theory.  This Court has specifically recognized

that other courts have compelled arbitration of claims asserted against a nonsignatory to an arbitration agreement where the claims against the nonsignatory are intertwined with the agreement that the signatory signed. *Bannett v. Hankin,* 331 F. Supp. 2d 354 (E.D. PA 2004). As noted by the Second Circuit Court of Appeals in *Thomson-CSF, S.A. v. AAA,* 64 F.3d 773 (2nd Cir. 1995), "the circuits have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." 64 F.3d at 779, *abrogated in part by THI of N.M. at Hobbs Ctr., LLC v. Patton,* 2012 U.S. Dist. LEXIS 5252 (D.N.M. Jan. 3, 2012). In *Bannett*, this Court noted with approval that the estoppel theory can be used by a nonsignatory to compel arbitration:

> This theory applies when a signatory to the written agreement must rely on the terms of the agreement to assert its claims against the nonsignatory such that the signatory's claims make reference to or presume the existence of the written agreement, or the signatory's claims arise out of and relate directly to the written agreement.

*Bannett v. Hankin,* 331 F. Supp. 2d 354 (E.D. Pa 2004).

United's claim against Chartis Claims and Crawford rely specifically on the allegations of breach of the insurance policies. The Amended Complaint alleges that Chartis Claims and Crawford "on behalf of the Insurance Company Defendants, have intentionally wrongfully, and without justification, procured the breach of United Refining's insurance contracts with each of the Individual Insurance Companies by delaying and denying the payment of United Refining's claims…" (Amended Compl. ¶ 77). The factual allegation asserted to support the tort claims against Chartis Claims and Crawford is the alleged breach of the insurance policies and presumes that there was an insurance policy that required payment of United's claims. As such, the claim relies on the terms of the Policies, and pursuant to the recognized estoppel theory should be included in the arbitration.

Alternatively, if the Court does not dismiss the intentional interference with contractual relations claim pursuant Defendants' Motion to Dismiss the claims as arbitrable claims, the claim

should be stayed pending the arbitration.  Chartis Claims and Crawford cannot be liable to United for intentional interference with contractual relations without a breach of the contract. Because the breach of contract claim is subject to arbitration, if the arbitration results in a finding of no breach, the intentional interference with contractual relations claim fails as a matter of law. In the interest of judicial economy, the tort claim should be stayed if not dismissed.

**II.**     **THE AMENDED COMPLAINT DOES NOT ALLEGE ANY INTENTIONAL ACTS TO SUPPORT A CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM**

United's claim for intentional interference with contractual relations against National Union, Chartis Claims and Crawford must be dismissed because United does not allege that National Union, Chartis Claims or Crawford took purposeful action with the specific intent to harm United 's contractual relations with Insurer Defendants.

To establish a claim for intentional interference of a contract, United must allege:

    1) the existence of a valid contract between the plaintiff and a third party;

    2)  defendant's knowledge of the contract;

    3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and

    4) damages to the plaintiff.

*Foster v. Churchill*, 87 N.Y.2d 744 (1996).[3]

A plaintiff alleging a tortious interference with contractual relations claim must allege that "the defendant used 'wrongful means' to induce the third party to breach the contract." *Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319 (E.D. N.Y. 2003).  "Phrased

---

[3] As discussed above, New York law applies to this action because all the allegations arise out of actions based on the insurance contract, which has a New York choice of law provision.  Regardless, the elements to establish intentional interference of contractual relations in Pennsylvania and tortious interference with contractual relations in New York are virtually identical. *Compare Steffy & Son, Inc. v. Citizens Bank of Pa.*, 7 A.3d 278, 288-89 (2010) *and Foster v. Churchill*, 87 N.Y.2d 744 (1996). Because there is no conflict of law between the states, no choice of law analysis needs to be performed. *See Pacific Employers Insurance Co. v. Global Reinsurance Corporation of America*, 693 F.3d 417 (2012).

another way, the third element involves a defendant's *improper* intentional interference with performance of an existing contract." *Wolff v. Rare Medium, Inc*., 171 F. Supp. 2d 354, 359 (S.D. N.Y. 2001) (emphasis added). "Wrongful means" has been defined to include "physical violence, fraud, or misrepresentation, civil suits and criminal prosecutions, and some degree of economic pressure." *Medtech Prods. v. Ranir, LLC*, 596 F. Supp. 2d 778, 813 (S.D.N.Y. 2008); *Wolff*, 171 F. Supp. 2d at 359. When a plaintiff does not allege any facts to demonstrate that the defendant "coerced, persuaded, or even asked [Defendant] to breach [the contract]… such an allegation cannot form the basis of 'intentional inducement'." *Medtech*, 596 F. Supp. 2d at 814-815.

United's allegations supporting its intentional interference with contractual relations claims against National Union, Chartis Claims and Crawford are nothing more than conclusory statements that do not meet the federal pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell*, 550 U.S. 544. United does not allege that Defendants Chartis Claims, Crawford or National Union *intentionally induced* the Insurer Defendants to breach their contracts with United.

United's factual allegation to support the claims is that Chartis Claims and Crawford "suggested that exclusions in the Polic[ies] excluded United Refining's loss," resulting in interference with United's contractual relationships with all of the other Insurer Defendants. (Amended Compl. ¶¶ 53-54). United does not allege that Defendants Chartis Claims or Crawford had any specific contact with the Insurer Defendants designed to induce a breach.  Nor does United assert that Chartis Claims or Crawford economically coerced, persuaded, or even influenced the Insurer Defendants to breach the Policies. Without such allegations, United has not formed the basis to satisfy the element of intentional inducement.

United's allegations against Defendant National Union are similarly flawed.  United alleges that National Union was "advocating for wrongful reliance upon inapplicable policy exclusions," which then "caused the other Insurance Company Defendants to breach their Insurance contracts with United Refining by refraining from paying their 87.5% quota-shares of United Refining's losses." (Amended Compl. ¶¶ 68-70). The Amended Complaint does not allege

any causal link between National Union's alleged actions and any intentional act directed to induce the Insurer Defendants to breach the Policies.

The Amended Complaint includes only unsubstantiated allegations and assertions that Chartis Claims, Crawford and National Union intentionally interfered with the Policies. United alleges no *facts* to support the element that Defendants Chartis Claims, Crawford or National Union acted with the intent to induce Insurer Defendants to breach their contracts with United. As such, United has failed to state a claim for intentional interference with contractual relations against Chartis Claims, Crawford and National Union. Therefore, Counts II and III should be dismissed.

### III. <u>COUNT IV FOR VIOLATION OF THE PENNSYLVANIA BAD FAITH STATUTE MUST BE DISMISSED AGAINST ALL DEFENDANTS BECAUSE PENNSYLVANIA LAW DOES NOT APPLY</u>

The claims asserted in the Amended Complaint for violation of the Pennsylvania bad faith statute should be dismissed for failure to state a claim for two reasons; the New York choice of law provisions in the Policies, and XL Bermuda's Policy preclusion of the application of a Pennsylvania statute.

The Policies provide that "any dispute between the Insured and Underwriters relating to this Policy or to a claim (including but not limited thereto, the interpretation of any provision of the Policy) shall be governed by and construed in accordance with the laws of New York." (Amended Compl. Ex. D, p. 17; Ex. E, p. 17; Ex. F, p. 17). The XL Bermuda policy also contains a New York choice of law provision. (Amended Compl., Ex C, p. 3). The presence of these choice of law provisions demonstrate that the parties intended New York law to apply to any dispute relating to the policy or a claim under the policy, and Pennsylvania courts uniformly uphold parties' agreements regarding the choice of law to govern their disputes.

Pennsylvania law provides that, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied."  Restatement (Second) of Conflict of Laws § 187(1); *U.S. Claims, Inc. v. Yehuda Smolar, PC,* 602 F. Supp. 2d 590, 597 fn. 9 (E.D. Pa. 2009).

Particularly, where the insurance contract contains an explicit choice of law clause that the substantive law of a certain state will apply to the policy, this manifestation of the parties' selection of law will be given effect.  *Miller v. Allstate Ins. Co.*, 763 A.2d 401, 403 (Pa. Super. 2000).

Under Pennsylvania law, choice of law provisions will govern both contract and tort claims between contracting parties when "the fair import of the provision embraces all aspects of the legal relationship."  *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994).  Courts make this determination by analyzing the parties' intent to encompass all elements of their association as indicated by a careful reading of the narrowness or breadth of the choice of law provision.  *Id.*

In *Composiflex, Inc. v. Advanced Cardiovascular Systems, Inc.*, the choice of law provision in the subject contract contained the language, "to all matters, including, but not limited to, matters of validity, construction, effect, or performance." 795 F. Supp. 151, 157 (W.D. Pa. 1992). The court found that this broad language demonstrated the parties' intent "to embrace all aspects of the relationship," rather than just contract formation issues, and therefore the choice of law provision applied to both tort and contract matters. *Id.* at 157.

Here, as in *Composiflex*, the choice of law provision in the Policies includes the similarly broad language, "any dispute between the Insured and Underwriters relating to this Policy or to a claim (including but not limited thereto, the interpretation of any provision of the Policy)." (Amended Compl., Ex. D, p. 17; Ex. E, p. 17; Ex. F, p. 17). This broad language, such as "any dispute" and "including but not limited to," demonstrates the parties' intent to encompass all elements of their relationship. Further, the contract does not include any language limiting the choice of law provision to only the construction or interpretation of the Policies. Because the broad language used embraces all aspects of the relationship between the contracting parties, the choice of law provision encompasses both contract and tort claims. Therefore, New York law applies to all of United's claims, contractual and tort, relating to the Policies, which includes the claim of bad faith.

United's claim for violation of the Pennsylvania bad faith statute must be dismissed because New York law applies to all claims relating to the Policies. When a contract contains a choice of law provision, the plaintiff cannot bring a claim under another state's statutory laws. *See Warren E. Johnson Companies v. Unified Brand, Inc.,* 735 F. Supp. 2d 1099 (2010) (Minnesota court dismissed a statutory claim under Minnesota law when the choice of law provision contracted to apply Mississippi law); *Cheetham v. Locomotive Engineers & Conductors Mutual Protective Association,* 2012 U.S. Dist. LEXIS 88933 (S.D. W.Va. 2012) (Plaintiff could not pursue a claim of statutory or common law bad faith under West Virginia law when choice of law provision provided for Michigan law to apply); *Elberta Crate & Box Co. v. Cox Automation Systems, LLC,* 2005 U.S. Dist. LEXIS 17490 (M.D. Ga 2005) (Georgia court dismissed statutory claim under Georgia law when choice of law provision contracted for Illinois law to apply).

Additionally, New York law provides that, "where the allegation of bad faith refusal to pay depends on a determination of the plaintiff's obligations under the insurance contract, the breach of contract and bad faith claims are inextricably intertwined and should be governed by the laws of the same state." *Commerce and Industry Ins. Co., v. U.S. Bank National Assoc.,* 2008 U.S. Dist. LEXIS 67768 (S.D. N.Y. 2008). This is because, "an unnecessarily confusing situation would result if the law of one state is used to interpret the insurance agreement regarding the breach of contract claim and the law of a second state is applied to interpret the same agreement with regard to the bad faith action." *Home Ins. Co. v. Serv. America Corp.,* 654 F. Supp. 157, 158-159 (N.D. Ill. 1987).

The choice of law clause applies New York law to "any dispute" between United and Insurer Defendants. It does not limit the types of matters to which New York law would apply. As a result, United cannot bring a statutory claim for bad faith under Pennsylvania law when New York law governs any bad faith claim. Further, it would be "unnecessarily confusing" to apply New York law to the breach of contract claim, and Pennsylvania law to the claim of bad faith. Especially considering both of the claims arise out of the same conduct; namely the Insurer

Defendants' alleged refusal to pay benefits under the Policies. Therefore, the statutory bad faith claim should be dismissed.

**IV.**    **UNITED'S CLAIMS AGAINST "CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON" AND "LONDON MARKET INSURANCE COMPANIES" ARE TIME-BARRED AND SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)**

Pursuant to Rule 12(b)(6), Certain Underwriters at Lloyd's[4] and the London Market Companies also move to dismiss because United did not commence the lawsuit against them within the 12-month time limitation in the Policy.  The Policies attached to United's Amended Complaint all include a "Suit Against the Company Clause" which requires that any suit or action for the recovery of any claim must be commenced within twelve (12) months of declination of the claim.  United failed to commence the suit within the 12 month period.

The claim was denied by the Insurer Defendants by letter dated October 10, 2011.  On October 5, 2012 United filed a Praecipe to Issue Writ of Summons in the Court of Common Pleas in Philadelphia. The Praecipe listed some of the defendants only as "Certain Underwriters at Lloyd's and London Market Insurance Companies."  United did not file a Complaint or any other document identifying the defendants or the policy numbers.

Under Pennsylvania law, a civil action may be commenced by filing a complaint or a Praecipe to Issue Writ of Summons.  Pa. R. Civ. P. § 1007.  In addition, the plaintiff must file a Praecipe to Reissue a Writ of Summons in a specified time period if the plaintiff fails to serve an Amended Complaint.  Pa. R. Civ. P. § 401(b).

United chose to commence the action days before the suit limitation expired by filing the Praecipe.  The Praecipe, however, does not identify the Insurers.  The sole designation of the defendants simply as Certain Underwriters at Lloyd's and London Market Insurance Companies does not identify the Insurers who issued the Insurance Policies to United.

---

[4] Lloyd's is an association that provides the physical premises and the administrative services and staff to enable insurance underwriters to carry on their business. Lloyd's is not an insurance company, but rather is an exchange or market where various individuals or groups bid on the right to insure a given risk. Lloyd's takes no part in the business of underwriting; policies are underwritten at Lloyd's and not by Lloyd's. *Chemical Leaman Tank Lines v. Aetna Cas. & Sur. Co.*, 177 F.3d 210 (3rd Cir. 1999)

Designating only "Certain Underwriters at Lloyd's" and "London Market Insurance Companies" without any further designation is not sufficient to identify the Insurers. The document filed by United did not identify the Insurers by policy number or other designation. United attached a list of policy numbers to the Complaint filed several months after Praecipe but the policy numbers were not included in the Praecipe that United filed in attempt to toll the 12-month limitation.

A Florida court reviewing the same issue concluded that simply designating entities without reference to a policy number is insufficient. In *Certain Underwriters at Lloyd's v. Gib. Budget Plan, Inc.,* the court held that simply designating the "Corporation of Lloyd's" without reference to a policy number is not sufficient to identify the insures in a lawsuit. 9 So. 3d 646 (Fla. Dist. Ct. App. 4th Dist. 2009). The court stated:

> The Corporation of Lloyd's filed a motion to dismiss in December, 2004. The motion stated that it had been misidentified and improperly sued. Supported by an affidavit, the motion pointed out that the Corporation of Lloyd's is an "administrative body which provides premises and other support services to a unique and complex international insurance market, just as the New York Stock Exchange provides premises and other support services to the securities market."

> The motion asserted that the Corporation of Lloyd's is not an insurance company and, that it "does not underwrite or sell insurance of any type or kind in England, the United States or in any other country." The motion suggested that the proper way to bring suit was to sue those underwriters subscribing to a particular policy. *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925 (2d Cir. 1998) (explaining the structure of the business of Lloyd's); *Lipcon v. Lloyd's*, 148 F.3d 1285, 1288 (11th Cir.) 1998).

> The defendant described in the amended complaint is not an entity capable of being sued, any more than "a certain driver in Broward County" would be a proper defendant in a case arising from an automobile accident. The amended complaint does not contain a policy number that could be used to identify the underwriters of the policy. There is no indication that service at the New York address is sufficient as to such underwriters.

*Certain Underwriters at Lloyd's,* 9 So. 3d at 647-648.

Similarly, "Certain Underwriters at Lloyd's" or "London Market Insurance Companies" is not sufficient to toll the suit limitations provision. Absent a specific reference to the policy

numbers, the designation of simply "Certain Underwriters at Lloyd's" is not sufficient. Further, "London Market Insurance Companies" is not an entity capable of being sued. Although United may have identified the Insurers who issued the policies in Exhibit A to the Complaint it filed after the suit limitation expired, no such identification was attempted prior to the expiration of the 12-month period. The defendants listed in the Praecipe were not identified by name, policy number or otherwise in the document filed prior to the expiration of the time to file suit.

As a consequence, filing the Praecipe did not commence the action against the Insurers that were not specifically identified in the Praecipe. The Amended Complaint is time-barred as to Certain Underwriters at Lloyd's of London Subscribing to AJN0093509A09 (Syndicate 1183); Certain Underwriters at Lloyd's of London Subscribing to EL900296 (Syndicates 2003, 2987, 9129); Great Lakes Reinsurance (UK) PLC; Infrassure, Ltd.; General Security Indemnity Company of Arizona; Torus Insurance (UK) Ltd.; Paris Re Holdings, Ltd. and Glacier Insurance.

## CONCLUSION

Based on the foregoing, Defendants respectfully request the Court issue an Order:

1.      Dismissing all counts in the Amended Complaint against all Defendants, pursuant to the arbitration provisions in the Policies and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

2.      Dismissing Counts II and III of the Amended Complaint for Intentional Interference with Contractual Relations against Defendants Chartis Claims, Crawford and National Union for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

3.      Dismissing Count IV of the Amended Complaint for Violation of the Pennsylvania Bad Faith Statute against the Insurer Defendants because New York law applies to this matter.

4.      Dismissing all counts in the Amended Complaint against Certain Underwriters at Lloyd's of London Subscribing to AJN0093509A09 (Syndicate 1183); Certain Underwriters at Lloyd's of London Subscribing to EL900296 (Syndicates 2003, 2987, 9129); Great Lakes

Reinsurance (UK) PLC; Infrassure, Ltd.; General Security Indemnity Company of Arizona; Torus Insurance (UK) Ltd.; Paris Re Holdings, Ltd. and Glacier Insurance pursuant to Fed. R. Civ. P. 12(b)(6) because United did not commence the lawsuit against them within the 12-month time limitation in the Policy.

By:    /s/ Amy M. Churan

William A. Webster  (*Admitted Pro Hac Vice*)
Amy M. Churan (*Admitted Pro Hac Vice*)
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2049 Century Park East, 34th Floor
Los Angeles, CA  90067-3208
E-mail: WAWebster@rkmc.com
E-mail: AMChuran@rkmc.com
Telephone:  310-552-0130
Facsimile:  310-229-5800

Basil A. DiSipio
**LAVIN, O'NEIL, RICCI, CEDRONE & DiSIPIO**
190 N. Independence Mall West, Suite 500
Philadelphia, PA 19106
E-mail: BDisipio@Lavin-Law.com
Telephone:  (215) 351-7929
Facsimile:   (215) 627-2551

Attorneys for Defendants

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO AJN0093509A09 (Syndicate 1183); CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO EL900296 (Syndicates 2003, 2987, 9129); GREAT LAKES REINSURANCE (UK) PLC; INFRASSURE, LTD; GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; TORUS INSURANCE (UK) LTD; PARIS RE HOLDINGS, LTD; GLACIER INSURANCE; XL  (BERMUDA) LTD; SWISS RE INTERNATIONAL SE; CHARTIS CLAIMS, INC.; and CRAWFORD & COMPANY