EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED REFINING COMPANY<br><br>         Plaintiff,<br><br>  v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA,<br><br>ALLIANZ GLOBAL RISKS US INSURANCE COMPANY,<br><br>CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON AND LONDON MARKET INSURANCE COMPANIES,<br><br>XL INSURANCE (BERMUDA) LTD.,<br><br>SWISS RE INTERNATIONAL SE,<br><br>CHARTIS, and,<br><br>CRAWFORD & COMPANY d/b/a CRAWFORD GLOBAL TECHNICAL SERVICES,,<br><br>         Defendants. | Civil Action No. 2:13–CV-00909–CDJ |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## TABLE OF CONTENTS

Page

I. THE NATIONAL UNION AND VALIDUS POLICIES CONTAIN A NEW YORK CHOICE OF LAW PROVISION ............................................................................ 1

II. NEW YORK LAW APPLIES TO PLAINTIFF'S CLAIMS FOR BAD FAITH ............. 2

III. NO FACTUAL OR LEGAL AUTHORITY SUPPORTS CONVERTING THE POLICIES' "ARBITRATION" CLAUSE INTO AN "APPRAISAL" CLAUSE ............. 4

IV. THE SUIT LIMITATION CLAUSE IS VALID AND ENFORCEABLE ....................... 6

V. UNITED HAS FAILED TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS .............................................. 9

VI. THE COURT SHOULD STAY ANY NON-ARBITRABLE CLAIMS .......................... 9

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Aetna Casualty & Sur. Co. v. Richard I. Rubin & Co.*,
  1994 U.S. Dist. LEXIS 17347, 5 (E.D. Pa. 2004) ............................................................... 5

*Assicurazioni Generali, S.P.A. v. Clover*,
  195 F.3d 161 (3d Cir. 1999) ................................................................................................ 2

*AT&T Tech., Inc. v. Commc'n Workers of Am.*,
  475 U.S. 643 (1986) ............................................................................................................ 5

*Bargaintown, D.C., Inc. v. Bellefonte Insurance Co.*,
  54 N.Y. 2d 700, 426 N.E.2d 469 (1981) ........................................................................ 5, 7

*Behrens v. City of New York*,
  279 A.D.2d 407 (N.Y. App. Div. 2001) .......................................................................... 5, 6

*Buddy's Plant Plus Corp. v. CentiMark Corp.*,
  No. 10–670, 2013 WL 169697, 2013 U.S. Dist. LEXIS 6373
  (W.D. Pa. Jan. 16 2013) ...................................................................................................... 2

*Caribbean Petroleum Corp. v. New Hampshire Ins. Co.*,
  2004 WL 540468 (S.D.N.Y. 2004), ................................................................................... 8

*Certain London Market Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co*,
  269 F. Supp. 722 (N.D. Miss 2003) .................................................................................... 8

*Chiste v. Hotels.com L.P.*,
  756 F. Supp. 2d 382 (S.D.N.Y. 2010) ................................................................................. 2

*City of Phila. v. One Reading Ctr. Assocs.*,
  143 F. Supp. 2d 508 (E.D. Pa. 2001) .................................................................................. 2

*Composiflex, Inc. v. Advanced Cardiovascular Systems, Inc.*,
  795 F. Supp. 151 (W.D. Pa. 1992) ...................................................................................... 2

*General Instrument Corp. v. American Home Assurance Co.*,
  397 F. Supp. 1074 (E.D. Pa. 1975) .............................................................................. 5, 7, 8

*Haag v. Barnes*,
  9 N.Y.2d 554 (1961) ........................................................................................................... 3

*Halide Group, Inc. v. Hyosung Corp.*, No. 10–02392, 2010 WL 4456928,
  2010 U.S. Dist. LEXIS 118739 (E.D. Pa. Nov. 8, 2010) .................................................. 10

*Kilmer v. Connecticut Indemnity Co.*,
  189 F. Supp. 237 (M.D. Pa. 2002) ...................................................................................... 2

*Lloyd v. Hovensa, LLC*,
  369 F.3d 263, 269 (3d Cir. 2004) ...................................................................................... 10

# TABLE OF AUTHORITIES
(continued)

Page

*Mann v. NASA Int'l, Inc.*, No. 99CIV.11936 (AGS), 2000 WL 1182823,
at *6, 2000 U.S. Dist. LEXIS 11922 (S.D.N.Y. Aug. 21, 2000) ............................................. 10

*Marjorie Atwood v. St. Paul Fire and Marine Insurance Company*,
363 Ill. App. 3d 861, 845 N.E.2d 68 (Ill. App. Ct. 2006) ................................................. 5, 6, 7

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
998 F.2d 1192 (3d Cir. 1993) ................................................................................................... 1

*Perrin v. Pearlstein*,
314 F.2d 863, 867 (2d Cir. 1963) ............................................................................................. 3

*Seus v. John Nuveen Co., Inc.*,
146 F.3d 175 (3d Cir. 1998); ................................................................................................. 10

*Smith v. Commonwealth Nat'l Bank*,
384 Pa. Super. 65, 557 A.2d 775 (Pa. Super. Ct. 1989) ........................................................... 2

**Statutes**

40 Pa. Cons. Stat. Section 636 .................................................................................................... 7

**Other Authorities**

N.Y. Ins. Law § 3404(e) .............................................................................................................. 4

**Rules**

Fed. R. Civ. Pro. 12(b)(6) ............................................................................................................ 1

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants[1] hereby submit this Reply Memorandum of Points and Authorities in Support of their Motion to Dismiss Plaintiff's First Amended Complaint. This reply is limited to correcting misstatements of fact and misapplications of law in United's Opposition to the Motion to Dismiss.

### I. THE NATIONAL UNION AND VALIDUS POLICIES CONTAIN A NEW YORK CHOICE OF LAW PROVISION

United incorrectly asserts that neither the National Union nor the Lloyd's Syndicate 1183 (Validus) Policies contain a New York choice-of-law provision. *See* Opp. at p. 12, fn. 4. United's contention appears to be based on an incomplete and unofficial version of those Policies. *See* Exhibit B to its Amended Complaint. However, that copy does not contain the final signed versions of those Policies, but instead appears to be a conglomeration of signed and unsigned signature pages and an earlier version of its broker's manuscript form. The final signed versions of the National Union and Validus Policies contain different language than that contained in the Exhibit A broker's manuscript attached to the Amended Complaint.

The National Union signed final policy contains a "Choice of Law and Jurisdiction" clause that states that *any* dispute between the parties shall be governed by and construed in accordance with the laws of New York. *See* Aff. of Kevin Cotter in Supp. of Defendants' Reply; Ex. A, p. 17, para 36. Similarly, the signed Validus policy also contains a "Choice of Law Jurisdiction" clause at paragraph 35 identifying a New York choice of law for *any* disputes between the parties. Aff. of Kudret Ozep in Supp. of Defendants' Reply, Ex. A, p. 17, para. 35.[2]

---

[1] The Defendants are National Union Fire Insurance Company of Pittsburgh, PA ("National Union"); Allianz Global Risks US Insurance Company ("Allianz"); Certain Underwriters at Lloyd's of London Subscribing to AJN0093509A09 (Syndicate 1183); Certain Underwriters at Lloyd's of London Subscribing to EL900296 (Syndicates 2003, 2987, 9129); Great Lakes Reinsurance (UK) PLC, Infrassure, Ltd.; General Security Indemnity Company of Arizona improperly identified as Gsinda/Scor; Torus Insurance (UK) Ltd.; Paris Re Holdings, Ltd.; Glacier Insurance; Swiss Re International SE ("Swiss Re"); XL Insurance (Bermuda) Ltd ("XL Bermuda") (collectively, "Insurer Defendants"); Chartis Claims, Inc. ("Chartis Claims") improperly identified as the non-legal entity "Chartis"; and Crawford & Company ("Crawford") (collectively "Defendants").

[2] Reference to the final signed National Union and Validus Policies does not convert Defendants' Motion to Dismiss into a Motion for Summary Judgment. As set forth in *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1195 (3d Cir. 1993);: "A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." The court further stated that this policy "will not undermine the rationale underlying Rule 12(b)(6)'s requirement that a motion to dismiss be converted to a summary judgment motion if a court considers matters outside the pleadings. The reason that a court

## II. NEW YORK LAW APPLIES TO PLAINTIFF'S CLAIMS FOR BAD FAITH

United's choice of law analysis is devoid of any acknowledgement that United itself contracted for a New York choice of law provision in its insurance Policies with 12 different insurers involved with this loss. United ignores this key fact even though both Pennsylvania law and the Restatement of Conflict of Laws provide that *the first question* to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law. *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999). If the parties have agreed to the applicable law, "choice of law provisions in contracts will generally be given effect." *City of Phila. v. One Reading Ctr. Assocs.*, 143 F. Supp. 2d 508, 512 (E.D. Pa. 2001) (quoting *Smith v. Commonwealth Nat'l Bank*, 384 Pa. Super. 65, 68, 557 A.2d 775, 777 (Pa. Super. Ct. 1989)).)

Defendants rely on their opening brief to address the breadth of the parties' choice of law provision and its application to both contract and tort claims between the parties, but note that United's Opposition brief failed to mention or address the directly relevant case of *Composiflex, Inc. v. Advanced Cardiovascular Systems, Inc.*, 795 F. Supp. 151 (W.D. Pa. 1992) as presented in Defendants' Motion. That case is instructive because it involved a similarly broad choice of law provision, as contained in the United Policies, and was held to encompass claims for both tort and contract matters. *See also Buddy's Plant Plus Corp. v. CentiMark Corp.*, No. 10–670, 2013 WL 169697, at *2, *5; 2013 U.S. Dist. LEXIS 6373 (W.D. Pa. Jan. 16, 2013) (finding choice-of-law provision that provided that Pennsylvania law applied to "[a]ny disputes or actions relating to or arising out of the work" was valid and applied to tort claims); and *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 409 (S.D.N.Y. 2010) ("New York courts have interpreted the 'any dispute of any kind' language to be sufficiently broad to apply to both tort and contract claims arising from the agreement."). Rather than addressing *Composiflex*, United relied on the inapposite matter of *Kilmer v. Connecticut Indemnity Co.*, 189 F. Supp. 237 (M.D. Pa. 2002), which did not involve a

---

must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond. When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished." *Id.* at 1196-97 (citations omitted).

comprehensive choice of law provision as found in the United Policies. Similarly, none of the other authorities cited by United in support of permitting a claim for Pennsylvania bad faith involved a contractual choice of law provision. See Opp. at p. 28. The parties' choice of New York law for "any dispute" encompasses all of United's contract and tort claims and United's Opposition does not provide any authority to the contrary.

Instead, United contends that New York's choice of law rules mandate that Pennsylvania law should apply to United's bad faith claims by arguing that:

> Although New York courts generally accord deference to choice-of-law provisions in contracts, such provisions are not controlling and may be *disregarded* where the most significant contacts with the matter in dispute are in another state. Haag v. Barnes, 9 N.Y.2d 554, 559 (1961); Perrin v. Pearlstein, 314 F.2d 863, 867 (2d Cir. 1963).

Opp. at p. 27 (emphasis added).

Neither of United's 50 year old case authorities supports this sweeping and inaccurate statement of the law. *Perrin* is inapposite because it did not involve the application of a choice of law provision, but instead addressed the application of a particular state's law to an oral contract in which neither party expressed any intention for a particular state's law to govern their actions. *Perrin* at 867. *Haag* is similarly unavailing as that court *upheld* the parties' contractual choice of law provision. The *Haag* court never suggested, in dicta or otherwise, that a choice of law provision in a contract can be *disregarded*. To the contrary, the court in *Haag* stated that:

> The agreement, in so many words, recites that it 'shall in all respects be interpreted, construed and governed by the laws of the State of Illinois' and since it was also drawn and signed by the complainant in Illinois, the traditional conflicts rule would, without doubt, treat these factors as conclusive and result in applying Illinois law. But even if the parties' intention and the place of making of the contract are not given decisive effect, they are nevertheless to be given heavy weight in determining which jurisdiction 'has the most significant contacts with the matter in dispute.'

*Id.* at 559–60. Neither of these cases supports an application of Pennsylvania law to the United bad faith allegations in contravention of the contractual choice of law provision in the Policies. The language of the Policies is a clear and unequivocal mandate to apply New York law to all aspects of this dispute.

### III. NO FACTUAL OR LEGAL AUTHORITY SUPPORTS CONVERTING THE POLICIES' "ARBITRATION" CLAUSE INTO AN "APPRAISAL" CLAUSE

The plain language of the Policies repeatedly refers to "arbitration" of the parties' disputes. (See Policies: Table of Contents p. 2 references "Arbitration Clause;" General Conditions para. 27 titled "Arbitration Clause;" General Conditions, para. 36, Choice of Law and Jurisdiction clause states that "Subject to the Arbitration Clause of the Policy Wording, each party agrees to submit to the exclusive jurisdiction of the Courts of the United States of America".[3]) United ignores this language and erroneously argues that the Arbitration Clause in the Policies is actually an appraisal provision. Opp. at pp. 9–10.

United asserts, without citation to any authority, that the arbitration language found in the Policies is a "standard-form appraisal clause that is customarily found in property insurance policies...." Opp. at p. 10. However, a simple review of a standard form appraisal provision demonstrates that it is not. For example, the New York's standard form appraisal language reads:

> In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested *appraiser* and notify the other of the *appraiser* selected within twenty days of such demand. The *appraiser* shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The *appraisers* shall then *appraise* the loss, stating separately actual cash value and loss to each item; and failing to agree, shall submit their differences only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each *appraiser* shall be paid by the party selecting him and the expenses of *appraisal* and umpire shall be paid by the parties equally.

Standard Fire Insurance Policy of the State of New York, N.Y. Ins. Law § 3404(e) (emphasis added). The differences between this appraisal language and the Arbitration Clause are numerous.[4]

---

[3] The XL Policy contains an Arbitration Clause calling for arbitration of the dispute in London. *See* Ex. C to the Amended Complaint, XL Terms and Conditions.

4 Arbitrations and appraisals are two forms of dispute resolution, but are very different from each other and courts have found a "significant difference between the formality and scope of the two systems." 6 John Alan Appleman, Appleman, Insurance Law and Practice § 3922 (3d ed. 1972). "The object of arbitration is to achieve a final disposition of the differences between the parties in an easier more expeditious, and less expensive manner than by litigation." 20 John Alan Appleman, Appleman, Insurance law and Practice § 11431 (2d ed. 1980). Appraisal,

Most notably, however, is the fact that nowhere in the standard appraisal provision are the words "arbitrator," or "arbitration," and it does not resolve non-measurement issues, both of which are present in the United Policies' arbitration provision.

Additionally, in *Aetna Casualty & Sur. Co. v. Richard I. Rubin & Co.*, the court looked at the exact same language, addressed it as an arbitration clause not an appraisal clause, and found that "as written, the arbitration agreement encompasses disagreements over 'the liability of the Insured' and 'the amount of loss or damage.'" 1994 U.S. Dist. LEXIS 17347, 5 (E.D. Pa. 2004) The *Aetna* court found that all of the causes of action, both measurement and coverage, came under the arbitration provision and thus were arbitrable. Similarly the measurement and coverage issues at issue here must be arbitrated.[5]

United argues that *Aetna* is not "analogous" here. Opp. at p. 15. However, in *Aetna* this Court, the Eastern District of Pennsylvania, addressed the identical policy language at issue in the United Policies. None of United's authorities involve a similar policy with a similar clause that addresses the liability of the insurer. *See* Opp. at pp. 10, 12, and 13. An arbitration properly conducted per the terms of the Arbitration Clause here would dispose of the entire controversy between United and Insurers—not just the amount of the loss, but also the liability of Insurers under the Policy.

United also contends that Defendants' are essentially seeking reformation of the Policies to rewrite the word "Insured" to "Insurer." Opp. at p. 15. That is incorrect. Defendants are not seeking a reformation of the Policies, or asserting that the policy is ambiguous or that extrinsic evidence must be admitted to resolve the ambiguity.[6] Rather, Defendants assert there is an

---

however, is a "non-judicial means of resolving disputes about the amount of loss, but does not determine liability under a policy." *Id.*

[5] United alleges that that the Insurance Company Defendants "agreed with the amount of United Refining's CBI and CEE claims" and "have not contested the amount of damage or loss sustained by United." (Opp. at pp. 6 and 11.) This issue is beyond the scope of this motion, but it should be noted for the record that the Insurer Defendants do not concede agreement regarding the measurement of the insured loss.

[6] United contends that any ambiguity should be construed against Insurers and in favor of coverage. Opp. at p. 14. However, the issue raised in Defendants' Motion to Dismiss is not a coverage issue; it is the interpretation of an arbitration provision. There is a strong federal policy favoring arbitration and construing arbitration provisions to cover the parties' dispute. *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986).

obvious typographical error in the policy, such that the arbitration provision should be read to mean the liability of the Insurer, not the liability of the Insured. *See Aetna Casualty & Surety Co. v. Richard I. Rubin & Co.*, 1994 U.S. Dist. LEXIS 17347 (E.D. PA 1994). "A typographical error in an insurance policy does not create an ambiguity where the error, and the policy's intended meaning, would be apparent to an ordinary reader." *Id.* at 73; *see also Behrens v. City of New York,* 279 A.D.2d 407 (N.Y. App. Div. 2001) (despite "the insurer's typographical error," court found no ambiguity where "the exclusionary import of the endorsement is clear and, indeed, 'susceptible of only one interpretation.'"). The Court can simply interpret the Policies as they were intended to be written and need not find them ambiguous. Here, the policy's meaning is clear to the ordinary reader—the Arbitration Clause relates to matters regarding the liability of the "Insurer."

## IV.     THE SUIT LIMITATION CLAUSE IS VALID AND ENFORCEABLE

United's attempt to circumvent the one-year suit limitation clause is based on a single case that is factually distinguishable and contrary to the weight of authority. The conformity clause in the Suit Against the Company provision does not nullify the one-year suit limitation requirement.

The Policies require that any suit or action against the Insurers must be commenced within one-year of the declination of the claim "unless a longer period of time is provided by applicable statute." The wording is referred to commonly as the "conformity clause" and courts around the country have uniformly determined that the conformity clause does not substitute a state's general statute of limitations for the one-year period in the insurance contract. As explained by the court in *Marjorie Atwood v. St. Paul Fire and Marine Insurance Company*:

> Under plaintiff's interpretation, the Policy Limitations Period is a nullity in every state where a general statute of limitations on contract actions gives a party more than one year to file suit. This appears to be every state.
>
> \* \* \*
>
> Accordingly, if plaintiff's interpretation is correct, then the Policy's reference to state law renders wholly meaningless the one-year limitation on filing suit.

> There are three serious problems with this interpretation. First, it offends a well-settled principle of contract construction: a contract must not be interpreted in a manner that nullifies provisions of that contract.
>
> * * *
>
> Second, plaintiff's interpretation suggests a *post hoc* reading of the Policy that cannot reasonably be said to be consistent with the intent of the parties at the time they entered into the contract. For its part, defendant certainly did not intend the Policy's one-year time limit to be meaningless in every state, and plaintiff could not have reasonably read the Policy as suggesting such an intent on defendant's part. Therefore, plaintiff's interpretation of the policy is unreasonable.
>
> * * *
>
> Third, plaintiff's interpretation is undermined by the weight of authority.

*Marjorie Atwood v. St. Paul Fire and Marine Insurance Company*, 363 Ill. App. 3d 861, 845 N.E.2d 68 (Ill. App. Ct. 2006).

New York law is consistent with the overwhelming majority of courts that have addressed this issue. In *Bargaintown, D.C., Inc. v. Bellefonte Insurance Co.*, 54 N.Y. 2d 700, 702, 426 N.E.2d 469, 470 (1981), the court rejected the argument that the New York six-year statute of limitations for contracts was an "applicable statute" under the conformity clause. The court agreed that to read the provision to nullify the one-year requirement would render the provision meaningless.

The only reasonable interpretation of the provision is that the suit must be commenced within one-year of the declination of the claim unless a specific state law directed at insurance policies provides for a longer period. Here, neither New York nor Pennsylvania has a specific state law directed at insurance policies with a longer period. To the contrary, the Pennsylvania standard fire insurance policy includes a one-year suit limitation provision. 40 Pa. Cons. Stat. Section 636.

United erroneously relies upon *General Instrument Corp. v. American Home Assurance Co.*, 397 F. Supp. 1074 (E.D. Pa. 1975), a decision that is factually distinguishable. In *General Instrument*, the court held that the wording "unless a longer period of time is provided by applicable statute" allowed the application of the general statute of limitations for breach of contract. The court however, as emphasized in *Atwood*, "relied heavily on the fact that the

conditional language was much broader than that contained in an earlier version of the insurance policy." *Marjorie Atwood*, 845 N.E.2d at 73. Moreover, the court in *General Instrument* explained:

> The Court emphasizes that its holding does not question the general validity of contractual limitation of action provisions. Nor does the Court hold that a general statute of limitations will normally supersede a contractual limitation period. We simply hold that the unique wording of the limitation provision in the endorsement to this policy is vulnerable to an interpretation that the general statute of limitations is applicable here.

*General Instrument*, 397 F. Supp. at 1077. The *General Instrument* case therefore is not relevant to the United Policies and the one-year suit limitation provision is applicable and enforceable.

Furthermore, United's contention that the designation of "Certain Underwriters at Lloyd's and London Market Insurance Companies" without reference to policy numbers or other identification is sufficient to toll the limitations period is equally unavailing. United relies on *Caribbean Petroleum Corp. v. New Hampshire Ins. Co.*, 2004 WL 540468 (S.D.N.Y. 2004), but the issue of whether the designation of Certain Underwriters at Lloyd's is sufficient for tolling the statute of limitation was not at issue in that case. *See also Certain London Market Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co*, 269 F. Supp. 722 (N.D. Miss 2003) (addressing whether the general designation of "Certain London Market Insurance Companies" and "Certain Underwriters of Lloyd's of London" was sufficient designation of a real party in interest under Fed. R. Civ. P. 17(a)—not in the context of a suit limitation); and *Certain Underwriters at Lloyds of London, Subscribing to Policy No. EEO8782A830000-500 and Endorsement No. 508 v. Evans*, 896 F.2d 1255 (10th Cir. 1990) (declaratory action filed by Certain Underwriters at Lloyds of London and specifically identifying the insurers by policy number). Moreover, the court's acknowledgement of the policy number in *Caribbean Petroleum* suggests the policy number was in fact provided in the complaint.

Here United's operative notice of its suit against the Insurers—the writ of summons—did not identify a single Policy number. *See* Docket No. 3:17. Nor did it specify which Underwriters at Lloyd's of London Market Insurers that United sought to put on notice, by either reference to any syndicate numbers, syndicate names, or reference to any policy numbers whatsoever. United's

belated reference to this information in an exhibit to its Complaint, filed months after the expiration of the suit limitation provision, is not sufficient to meet United's burden of providing requisite notice to the Insurers.

## V. UNITED HAS FAILED TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

In their Motion to Dismiss National Union, Chartis Claims and Crawford argued that United's claim for intentional interference with contractual relations against them should be dismissed because (1) under New York law United was required to allege that National Union, Chartis Claims, and Crawford used "wrongful means" to induce the third party to breach the contract, and (2) under either New York or Pennsylvania law, United was required, but failed, to allege that National Union, Chartis Claims, and Crawford *intentionally induced* a breach of the Policies. While Insurers concede that an allegation of wrongful means is not required for an intentional interference with contractual relations claim in this context, Insurers continue to assert that New York law applies to this claim and United has failed to allege a sufficient factual basis to satisfy the element that National Union, Chartis Claims, or Crawford intentionally induced the Insurer Defendants to breach their contracts with United.[7]

## VI. THE COURT SHOULD STAY ANY NON-ARBITRABLE CLAIMS

If granted in its entirety, Defendants' Motion to Dismiss would dispose of a vast majority of United's claims—bad faith claims dismissed because Pennsylvania law does not apply; intentional interference claims dismissed for failure to properly state a claim; all claims against Syndicates 1183, 2003, 2987, 9129, Great Lakes Reinsurance (UK) PLC, Infrassure, Ltd., General Security Indemnity Company of Arizona, Torus Insurance (UK) Ltd., Paris Re Holdings, Ltd. and Glacier Insurance dismissed for failure to pursue an action within the contractual suit limitations period—leaving only a breach of contract claim against National Union, Allianz, XL, and Swiss Re, which should be arbitrated.

---

[7] Should the Court deny Defendants' Motion to Dismiss the Intentional Interference claims, Defendants continue to request that these claims be arbitrated or stayed as set forth on pp. 11-13 of Defendants' Motion to Dismiss.

Despite United's contentions, Defendants' request to dismiss the action was not "procedurally impermissible." Opp. at. p. 9, fn. 2. As recognized by the Third Circuit Court of Appeals and the Eastern District of Pennsylvania, a court may dismiss rather than stay the action where all of the issues raised in a suit are subject to binding arbitration. *See Seus v. John Nuveen Co., Inc.*, 146 F.3d 175, 179 (3d Cir. 1998); and *Halide Group, Inc. v. Hyosung Corp.*, No. 10-02392, 2010 WL 4456928, at *3 n.4; 2010 U.S. Dist. LEXIS 118739 (E.D. Pa. Nov. 8, 2010). A district court is only without discretion to dismiss a case where one of the parties applies for a stay pending arbitration. *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004). United is now requesting such a stay and Defendants do not object to that request.

In the event that the Court does not compel United to arbitrate all of its asserted claims, the Court should retain jurisdiction over the non-arbitrable claims and stay the case, pending the resolution of the arbitration proceedings. *See Mann v. NASA Int'l, Inc.*, No. 99CIV.11936 (AGS), 2000 WL 1182823, at *6, 2000 U.S. Dist. LEXIS 11922 (S.D.N.Y. Aug. 21, 2000))("Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit. . . . Further, stays are particularly appropriate where they promote judicial economy, avoidance of confusion and possible inconsistent results.").

By: /s/ Amy M. Churan

William A. Webster (*Admitted Pro Hac Vice*)
Amy M. Churan (*Admitted Pro Hac Vice*)
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2049 Century Park East, 34th Floor
Los Angeles, CA 90067–3208
E-mail: WAWebster@rkmc.com
E-mail: AMChuran@rkmc.com
Telephone: 310–552–0130 / Facsimile: 310–229–5800

Basil A. DiSipio
**LAVIN, O'NEIL, RICCI, CEDRONE & DiSIPIO**
190 N. Independence Mall West, Suite 500
Philadelphia, PA 19106
E-mail: BDisipio@Lavin-Law.com
Telephone: (215) 351–7929 / Facsimile: (215) 627–2551

Attorneys for Defendants